UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARIO EVANS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 1:17CV00221 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Mario Evans, a person in federal custody. On December 4, 2014, Evans was found guilty of the offense of Felon in Possession of a Firearm and, on April 7, 2015, this Court sentenced Evans to the Bureau of Prisons for a term of 221 months, a sentence within the sentencing guideline range. Evans' § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## I. STATEMENT OF THE CASE

**A. Preliminary proceedings**

On October 17, 2013, Movant Mario Evans ("Evans") was indicted by a federal grand jury in the Southeastern Division of the Eastern District of Missouri for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(e).[1] Doc. 1 (Case

---

[1] Evans was also indicted for possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The government later dismissed these charges prior to trial.

No. 1:13-CR00090 SNLJ). Evans made his initial appearance before Magistrate Judge Lewis Blanton on November 27, 2013. Doc. 5. Judge Blanton appointed attorney Jason Tilley to represent Evans in the case at that time. Doc. 7. On January 26, 2014, Mr. Tilley filed a waiver of the right to file pretrial motions on Evans' behalf. Doc. 21. On February 4, 2014, Evans appeared before Judge Blanton with Mr. Tilley for the purpose of making a record of Evans' decision to waive pretrial motions. During the proceeding, Evans informed Judge Blanton that he did not want to waive pretrial motions and that he wanted a new attorney. Doc. 23. After determining that irreconcilable differences had developed between Evans and Mr. Tilley, Judge Blanton appointed attorney Stephen C. Wilson to represent Evans from that point forward. Docs. 24-26.

Mr. Wilson subsequently filed a motion to suppress on Evans' behalf, alleging Fourth Amendment violations related to the seizure of a firearm from Evans' vehicle. Doc. 29. After the motion was filed, Judge Blanton retired and the case was referred to Magistrate Judge Abbie Crites-Leoni.

**B. Motion to Suppress Hearing**

The suppression hearing was held on April 8, 2014. Before the hearing, Mr. Wilson asked to address a preliminary matter concerning Evans' request to have Judge Crites-Leoni recuse herself from the case. (Transcript of Evidentiary Hearing, "EH Tr.," Doc. 39, p. 5). Mr. Wilson stated that he had a discussion with Evans, who expressed concern about Judge Crites-Leoni presiding over his case because she was recently appointed to the bench after serving a number of years with the United States Attorney's Office (USAO). Mr. Wilson also noted that, while employed with the USAO, Judge Crites-

2

Leoni was supervised by Assistant United States Attorney Larry Ferrell, who was representing the government in Evans' case. EH Tr., p. 5. Mr. Wilson then stated, "On his behalf, I am going to raise that point at this time that he thinks he may not get a fair shake." EH Tr., p. 5. Mr. Wilson further stated that Evans was "concerned about that and wished to make an objection." EH Tr., p. 5.

The government responded that Judge Crites-Leoni had properly disqualified herself in cases in which she participated or had knowledge during her tenure with the USAO. The government expressed its understanding that this was the policy and practice that had been followed in the district with previous magistrate judges and was the appropriate procedure to follow. EH Tr., p. 6-7. The government further stated that, as an AUSA, Judge Crites-Leoni did not participate in the investigation or have any involvement, participation or knowledge of Evans' case during its existence in the USAO. EH Tr., p. 6 Accordingly, the government took the position that disqualification was not necessary. EH Tr., p. 6.

Judge Crites-Leoni then explained her relationship to the parties and her obligation to judge the matter impartially:

> Mr. Evans, I can't blame you for having the concern that you have. I want you to know that there are very special rules regulating how cases are assigned in this district, as they are across the country. My last day in the office was January 31st of this year in the U.S. Attorney's office.
> It may be interesting for you to know that I've actually had a relationship with your attorney Mr. Wilson for longer than I've had with the U.S. Attorney's office. Mr. Wilson was one of the first defense attorneys that I practiced with in this area. So I would say it's fair to say I have a relationship with both of the attorneys in this case.
> There is nothing about those relationships that will influence me as far as whether or not I listen to all the evidence in the case and consider that in making any decision with regard to the motion that you filed.

3

> In part of the selection process for this job there were a lot of questions about whether or not I would be fair in addressing cases where both the U.S. Attorney's office and the Defendant had issues. And in the examination of that question I think it was very clear that I have a new role now.
>
> I did work at the U.S. Attorney's office. I do have a prior working relationship with Mr. Wilson in many state cases as well as federal cases, but my role here is to listen to all the evidence from both sides, and I promise you that's what I'm going to do.

EH Tr., p. 7-8.

At the end of the explanation, Judge Crites-Leoni asked, "Do you feel better, Mr. Evans, about how I'm going to treat your case?" Evans responded, "Yes, ma'am." EH Tr., p. 8. The court concluded by stating, "That's how I intend to treat everyone in this court, so that's my promise to you. That's my promise to these men here representing both the Government and you." EH Tr., p. 8-9. After these assurances, Evans expressed no further concern about Judge Crites-Leoni's ability to be impartial.

Judge Crites-Leoni then heard testimony relevant to Evans' motion to suppress the firearm and other items recovered from his vehicle. The government called Brent Douglas, a police officer for the Charleston, Missouri Police Department. Officer Douglas testified that the City of Charleston has a population of approximately 5,000 people and has a very high crime rate. Crimes ranging from murders, drug dealings, and shootings occur on a frequent basis. EH Tr., p. 57. The highest crime area in this town is a six-block area, which includes a vacant carwash where Evans' vehicle was parked on the night in question. EH Tr., p. 56-59.

Officer Douglas testified that on August 2, 2013, at approximately 11:45 p.m., he noticed a vehicle parked behind the vacant carwash without its lights on. EH Tr., p. 59-

4

61. Officer Douglas was familiar with the carwash and that it was in the process of condemnation. EH Tr., p. 60. Burglaries in the area were common at the time, so Officer Douglas turned into the first driveway right behind the building. EH Tr., p. 61-62. Officer Douglas pulled in behind the parked car, stopped, and got out. EH Tr., p. 63.

Officer Douglas then noticed another car parked in an open bay of the vacant carwash. EH Tr., p. 63-64. Using his flashlight to illuminate the vehicle, Officer Douglas observed Evans standing on the driver's side of the vehicle. Officer Douglas had been proceeding toward the car in front of him when Evans came from behind the driver's side of the vehicle parked in the open bay. EH Tr., p. 64-65. Evans met Officer Douglas ten to fifteen feet before Officer Douglas could get to the parked vehicle in front of him. EH Tr., p. 65.

With the use of his flashlight, Officer Douglas recognized the subject as Evans. EH Tr., p. 66. Officer Douglas knew Evans from previous arrests and was familiar with his arrest record, which included arrests for violent crimes such as assault and armed criminal action. EH Tr., p. 62, 66-68, 122-124). Officer Douglas and Evans met between the patrol car and the car that Officer Douglas first observed parked on the parking lot. Officer Douglas positioned himself where he could watch both the vehicle parked on the lot and the vehicle that was parked in the open bay until a backup officer arrived. EH Tr., p. 69. Officer Douglas considered himself to be in a dangerous situation. EH Tr., p. 69-70.

Officer Wesley McDermott arrived a short time later. Officer Douglas then went over to the vehicle that was parked in the open bay to verify that no other individuals were

5

hiding in it. EH Tr., p. 70. From where he stood, Officer Douglas could not tell if there was anyone in the vehicle. EH Tr., p. 70. Officer Douglas proceeded to shine his flashlight into the open bay area where the car was located. As he approached the bay, Officer Douglas stepped to the right side of the parked vehicle and used his flashlight to illuminate the interior. EH Tr., p. 70-71. Officer Douglas observed a large amount of marijuana in the front passenger seat and a silver handgun. EH Tr., p. 70-73. When Officer Douglas saw the items located in the car, he placed Evans under arrest. EH Tr., p. 74. The handgun and marijuana were later seized and placed in evidence at the police station.

During a search incident to arrest, officers found a digital scale and a set of car keys in Evans' pockets. EH Tr., p. 76. The car keys were later confirmed to operate the vehicle in the carwash bay where the firearm was located in the front seat. EH Tr., p. 82. During the booking procedure at the police station, Evans inquired about the nature of his charges. After being advised he was arrested for being a felon in possession of a firearm, Evans stated: "How are you going to charge me with a gun, it doesn't even work, I just got it yesterday." EH Tr., p. 83-84.

During the suppression hearing, the court also heard extensive testimony that the vacant carwash grounds were open for public use and exposed to public view. EH Tr., p. 27-50, 85-95.

At the conclusion of the hearing, Judge Crites-Leoni took the matter under advisement. After extensive briefing by the parties, Judge Crites-Leoni filed a twenty-two page Report and Recommendation concluding that Evans' Motion to Suppress should be

denied. See Doc. 54. Evans subsequently filed objections to the Report and Recommendation, claiming Judge Crites-Leoni erred in denying his motion to suppress. Doc. 55. Evans also renewed his objection to Judge Crites-Leoni's failure to recuse herself. *Id*. On August 18, 2014, this Court reviewed and overruled defendant's objections to the Report and Recommendation. Doc. 56.

**C. Jury Trial**

Evans elected to proceed to trial on the charge of being a previously convicted felon in possession of a firearm, which took place on December 4, 2014. Following voir dire, the parties were given an opportunity to challenge jurors for cause, at which time Mr. Wilson asked the district court to strike the panel and declare a mistrial because there were no African Americans on the jury panel. Jury Trial Transcript ("JT Tr."), Doc. 109, p. 87. After hearing arguments from the parties, the district court denied the request.

The case then proceeded to trial. The government's evidence primarily consisted of the testimony of Officer Douglas and Officer McDermott, who described the events of the night of August 2, 2013 ultimately resulting in the recovery of the firearm from Evans' vehicle. JT Tr., p. 122-216. At the conclusion of the government's case, this Court ensured that Evans understood his rights with respect to the decision whether to testify on his own behalf. The following discussion occurred outside the presence of the jury:

> THE COURT: Mr. Evans, I need to ask you a number of questions and advise you of your rights to testify or not to testify. *** Mr. Evans, you have a right to testify in this case, as you know. And if you decide to do that, the Government lawyers will be allowed to cross-examine you. You know that, don't you?
>
> EVANS: Yes, sir.

7

> THE COURT: But the point is you do have the opportunity at this time to testify and tell your side of the story. On the other hand, you have the right not to testify. And if you decided not to testify, the jury will not be allowed to hold it against you that you decided not to testify. Do you understand that, too?
>
> EVANS: Yes.
>
> THE COURT: And that's the instruction that I read to the jury earlier, as you recall.
>
> EVANS: Yes.
>
> THE COURT: So have you talked with … your lawyer about this?
>
> EVANS: Yes.
>
> THE COURT: And have you come to a decision?
>
> EVANS: Yes.
>
> THE COURT: And this is your free and voluntary decision then?
>
> EVANS: Yes.
>
> THE COURT: And what is it then?
>
> EVANS: I will testify.

JT Tr., p. 245-46.

Evans proceeded to testify in his own defense, telling the jury that he had no knowledge of the firearm discovered in his vehicle. JT Tr., p. 253-330. At the conclusion of the one-day trial, the jury returned a verdict finding Evans guilty of being a previously convicted felon in possession of a firearm. Doc. 75. On April 7, 2015, Evans was sentenced to a term of 221 months imprisonment. Doc. 91. Evans subsequently filed a timely notice of appeal. Doc. 93.

**D. Direct Appeal**

Mr. Wilson was permitted to withdraw from the case after trial. The United States Court of Appeals for the Eighth Circuit subsequently appointed attorney Carter Collins Law to represent Evans in his direct appeal. Ms. Law filed a brief on Evans' behalf specifically raising three issues on appeal. First, Evans renewed his argument that the search of his vehicle violated the Fourth Amendment. Next, Evans maintained that Magistrate Judge Crites-Leoni should have recused herself before the suppression hearing. Finally, Evans asserted that the all-white venire panel violated his Sixth Amendment right to trial by an impartial jury. The government filed its brief in response to Evans' claims.

After the issues had been fully briefed by the parties, the Court of Appeals heard oral argument on January 15, 2016. On July 27, 2016, the Court of Appeals issued a unanimous published opinion addressing and denying all of Evans claims. *See United States v. Evans*, 830 F.3d 761 (8th Cir. 2016). Evans subsequently petitioned the United States Supreme Court for a writ of certiorari, which was denied on January 23, 2017. *Evans v. United States*, 137 S.Ct. 839 (2017).

**E. Petition for Post-Conviction Relief Pursuant to § 2255**

Evans has now filed a motion under 28 U.S.C. ' 2255, claiming that Attorney Stephen C. Wilson rendered ineffective assistance of counsel. Evans raises several allegations of ineffective assistance, most of which were raised and decided on direct appeal. Evans' claims are without merit.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on a claim alleging ineffective assistance of counsel, the Movant

has the burden of proving his or her claims for relief by a preponderance of the evidence. The Supreme Court of the United States set forth the standard to apply in such cases in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the Supreme Court held that a Movant must plead and prove two related but independent issues. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S., at 687. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. *Id*.

Regarding the first prong of the *Strickland* test, the proper standard for attorney performance is that of reasonably effective assistance. As the Supreme Court explained, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*., at 687-88. Recognizing the complexity and variety of issues that defense counsel must confront and address in any given case, the Supreme Court refused to adopt a standard that would implement an exhaustive set of detailed guidelines to evaluate attorney performance. Instead, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. Id. The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it

> has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S., at 689 (citations and internal quotation marks omitted). The Supreme Court further instructed that a reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*., at 690.

The second prong of the *Strickland* test requires a Movant to prove that he or she was prejudiced by counsel's deficient performance. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id*., at 691. The Supreme Court observed that "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*., at 693. Thus, it is not enough for the defendant to show that errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid*.

In evaluating an ineffectiveness claim, a reviewing court is not required to address both prongs of the *Strickland* test if the defendant makes an insufficient showing on one.

11

As the Supreme Court instructed, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." *Id.*, at 697. Thus, if a reviewing court determines the alleged errors would have had no impact on the result of the proceeding, the claim of ineffectiveness must fail. *See also Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000) (describing two-fold *Strickland* test as inquiry into "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test.").

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S., at 689. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027 (quoting *Strickland*, 466 U.S., at 688). Counsel's challenged conduct is viewed as of the time of his representation and "we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. Again, a reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S., at 689.

### **Need for evidentiary hearing and burden of proof**

A motion filed under 28 U.S.C. § 2255 should be denied without an evidentiary

hearing when the court records conclusively show that the movant is not entitled to relief.

The statute provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon.

28 U.S.C. § 2255(b).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court further provides:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

A district court has discretion in determining whether to hold an evidentiary hearing when a petition is brought under Section 2255, and the petitioner bears the burden of establishing the need for such a hearing. "A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (quoting *United States v. Sellner*, 773 F.3d 927, 929-30 (8th Cir. 2014)). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *See, e.g., Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

### III. DISCUSSION

In his motion under 28 U.S.C. § 2255, Evans alleges Attorney Stephen C. Wilson

13

rendered ineffective assistance of counsel. Evans specifically raises six allegations of ineffectiveness, which are summarized as follows:

**Ground One:** Fourth Amendment claim alleging Mr. Wilson failed "to adequately defend against an illegal search and seizure."

**Ground Two:** Sixth Amendment claim alleging Mr. Wilson failed "to adequately contest the lack of any African-Americans on the jury panel."

**Ground Three:** Fifth Amendment claim alleging the district court did not properly inquire as to whether he understood his right to testify.

**Ground Four**: Claim that Mr. Wilson failed to make a proper record regarding Evans' request for Judge Crites-Leoni to recuse herself.

**Ground Five**: General claim that Mr. Wilson failed to object and or / adequately cross-examine government witnesses at the suppression hearing.

**Ground Six:** General claim that Mr. Wilson "utterly failed to investigate and prepare [the] case either for a hearing on his motion to suppress or for trial."

**<u>Grounds One, Five and Six</u>**

Grounds One, Five, and Six all relate to Evans' dissatisfaction that he did not prevail on his motion to suppress the handgun seized from his vehicle. The Fourth Amendment claims in this case have been exhaustively litigated.

As set forth previously, Attorney Jason Tilley was initially appointed to represent Evans in this case. After reviewing the facts and circumstances surrounding Evans' arrest and the search of his car, Mr. Tilley recommended that Evans should waive pretrial motions. Evans apparently agreed with this assessment at the time, and a formal notice was filed to that effect. See Doc. 21. At the waiver hearing, however, Evans changed course and informed the magistrate judge that he wanted Mr. Tilley replaced with a new

14

attorney. Doc. 23. After determining that irreconcilable differences had developed between Evans and Mr. Tilley, the magistrate judge appointed Mr. Wilson to represent Evans. Docs. 24-26.

Mr. Wilson complied with Evans' wishes and filed a motion to suppress based on alleged Fourth Amendment violations. A full hearing was conducted before Judge Crites-Leoni, after which the parties submitted detailed written briefs. Docs. 43, 51. Judge Crites-Leoni subsequently filed a thorough twenty-two page Report and Recommendation, recommending that the district court deny Evans' motion. Doc. 54. Mr. Wilson then filed written objections to the Report and Recommendation. Doc. 55. After careful review, this Court overruled the objections and adopted the Report and Recommendation. Doc. 56. Mr. Wilson then properly preserved Evans' Fourth Amendment claims for appeal during the jury trial. Following Evans' conviction, a timely notice of appeal was filed. Doc. 93.

The United States Court of Appeals for the Eighth Circuit then appointed attorney Carter Collins Law to handle Evans' appeal. The Fourth Amendment claims were thoroughly briefed by the parties. The Court of Appeals then heard oral argument of the claims. In a unanimous published decision, the Court of Appeals directly addressed Evans' claims on the merits and concluded that the law enforcement officers complied with Fourth Amendment guarantees. *United States v. Evans*, 830 F.3d 761 (8th Cir. 2016).

It is well-settled that "[c]laims that 'were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.'" *United States v. Lee*,

15

715 F.3d 215, 224 (8th Cir. 2013) (quoting *Davis v. United States*, 673 F.3d 849, 852 (8th Cir. 2012)); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992). *See also Baranski v. United States*, 515 F.3d 857 (8th Cir. 2008) (holding that Fourth Amendment claim could not be raised in § 2255 motion because it had been raised and decided on direct appeal). Accordingly, Evans' claims will be denied.

**Grounds Two and Four**

Similarly, Evans' claims for relief in both Grounds Two and Four were fully briefed and argued before the Court of Appeals. The Court of Appeals subsequently denied Evans' claims on the merits. *See Evans*, 830 F.3d at 768-71. For the reasons stated above, they may not be relitigated in this proceeding.

**Ground Three**

Evans specifically alleges that the district court failed to

> engage[] in the typical colloquy with Evans as the defendant prior to Evans taking the stand in his own behalf, in order to inquire as to whether Evans fully understood his Fifth Amendment rights to testify, or to decline to testify, or whether Evans had adequate time to discuss this issue with his lawyer, so as to make a finding that he was testifying in a knowing and voluntary way.

Evans' Motion to Vacate, at 10.

This claim must be denied, as it is completely refuted by the record. At the conclusion of the government's case, this Court ensured that Evans understood his rights with respect to the decision whether to testify on his own behalf. The following discussion occurred outside the presence of the jury:

> THE COURT: Mr. Evans, I need to ask you a number of questions and advise you of your rights to testify or not to testify. *** Mr. Evans, you have a right to

16

in this case, as you know. And if you decide to do that, the Government lawyers will be allowed to cross-examine you. You know that, don't you?

EVANS: Yes, sir.

THE COURT: But the point is you do have the opportunity at this time to testify and tell your side of the story. On the other hand, you have the right not to testify. And if you decided not to testify, the jury will not be allowed to hold it against you that you decided not to testify. Do you understand that, too?

EVANS: Yes.

THE COURT: And that's the instruction that I read to the jury earlier, as you recall.

EVANS: Yes.

THE COURT: So have you talked with … your lawyer about this?

EVANS: Yes.

THE COURT: And have you come to a decision?

EVANS: Yes.

THE COURT: And this is your free and voluntary decision then?

EVANS: Yes.

THE COURT: And what is it then?

EVANS: I will testify.

JT Tr., p. 245-46.

The record conclusively demonstrates that this Court sufficiently explained Evans' rights with respect to his decision whether to testify. Accordingly, this point will be denied without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, this Court denies all of the claims contained in

Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Evans has not made a substantial showing of the denial of a federal constitutional right.

Dated this 15th day of June, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE